# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHANE MICHAEL AUERNHAMMER,

Defendant-Appellant.

UNPUBLISHED
November 10, 2015

No. 322800
Tuscola Circuit Court
LC No. 13-012931-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHANE MICHAEL AUERNHAMMER,

Defendant-Appellant.

No. 322870
Tuscola Circuit Court
LC No. 14-012990-FH

---

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

In Docket Nos. 322800 and 322870, defendant appeals as of right his jury trial convictions of possession of marijuana (second or subsequent offense), MCL 333.7403(2)(d) and MCL 333.7413(2), possession with intent to deliver less than 5 kilograms of marijuana (second or subsequent offense), MCL 333.7401(2)(d)(*iii*) and MCL 333.7413(2), and assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to concurrent sentences of three years' probation, with the first year to be served in jail, for each conviction. We affirm.

## I. FACTS

Defendant lived in an apartment above a hardware store. On October 15, 2013, a woman observed two men exchange money for a baggie behind the store. One of the men was wearing a green hooded sweatshirt, while the other man came down the back staircase of the hardware store. While the woman was talking to Tuscola County Deputy Sheriff Chris Whetstone, she

-1-

pointed out the man in the green hooded sweatshirt.  According to Sheriff Whetstone, the man, Travis Williams, admitted to Sherriff Whetstone that he had purchased a gram of marijuana for $10 from someone on the back staircase of the hardware store.  Sheriff Whetstone questioned Joseph Burkowski, who worked in the hardware store, and Burkowski informed him that defendant lived above the hardware store in an apartment that was at the top of the rear staircase.  Burkowski took Sheriff Whetstone to meet defendant.

According to Sheriff Whetstone, he confronted defendant who admitted that he had "sold his last bit of marijuana" to Williams.  Defendant denied Sheriff Whetstone's request to search his apartment.  Sheriff Whetstone claimed that when defendant was told that he would be detained so that no evidence would be destroyed while Sheriff Whetstone attempted to get a warrant to search, defendant "darted off running towards the -- the staircase," calling out "Starr."  Sheriff Whetstone said that he chased after defendant, drew his Taser, activated the Taser, and pointed the Taser at defendant, and that when defendant turned and saw that the Taser was pointed at him, he gave up saying "okay, okay, okay."  Defendant had run approximately 30 yards and the chase ended at the staircase.  Defendant was handcuffed and placed in a patrol car.  Sheriff Whetstone then went up the stairs and knocked on the apartment door.  Starr Majors, defendant's roommate at the time of the incident and fiancée at the time of trial, opened the door and let Sheriff Whetstone in.  Sheriff Whetstone smelled burnt marijuana and saw a water bong and sandwich baggies.  After obtaining a search warrant, Sheriff Whetstone and other officers found marijuana in the freezer and in defendant's bedroom, and also found burnt roaches, baggies, and a digital scale in the apartment.  A forensic expert testified that the bag in the freezer contained 180 grams of marijuana, that a bag in the bedroom contained 25.6 grams of marijuana, and that another bag contained 1.5 grams.

Defendant testified that he had been in his apartment with Jacob Fitzgerald and Majors, and denied leaving the apartment to sell anyone marijuana, which Fitzgerald confirmed.  Defendant denied selling marijuana or telling Sheriff Whetstone that he had sold his last bit of marijuana to someone.  He denied running from Sheriff Whetstone or taking one step away from Sheriff Whetstone when he was told the apartment would be searched.  Further, he denied that the marijuana in the apartment was his.  When asked if he knew that the marijuana was in the apartment, defendant said "Yes.  My girlfriend needs it."  Defendant's theory, supported by Fitzgerald, was that the marijuana belonged to Majors.  Majors invoked the Fifth Amendment and did not testify.

## II.  EFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his trial counsel was ineffective because he did not research the law and discover that § 4 or § 8 of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, were vicariously applicable to defendant, and because he did not raise such a defense before trial.  Defendant also argues that his trial counsel was ineffective for failing to call Gary Talaski as a witness at trial.  We disagree.

A defendant preserves the issue whether he was denied the effective assistance of counsel by moving for a new trial or a *Ginther*[1] hearing in the trial court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Defendant failed to move for a new trial or a *Ginther* hearing in the trial court. Therefore, the issue is unpreserved, and our review of the issue is limited to mistakes apparent on the record. See *id.*

The determination regarding whether there has been a deprivation of the effective assistance of counsel is a mixed question of law and fact. *Petri*, 279 Mich App at 410. The factual findings are reviewed for clear error and the matters of law are reviewed de novo. *Id.*

Effective assistance of counsel is presumed and a defendant claiming ineffective assistance is required to overcome a strong presumption that sound trial strategy motivated counsel's conduct. *Petri*, 279 Mich App at 410-411. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

## A. FAILURE TO RESEARCH THE LAW

Defendant was not denied the effective assistance of counsel based on the failure to assert a § 4 or § 8 defense pursuant to the MMMA, because such a defense would have lacked merit. Counsel cannot be ineffective for failing to advocate a meritless position. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Section 4(i), MCL 333.26424(i), provides a defense for a person who is solely in the presence or vicinity of the medical use of marijuana in accordance with the MMMA:

> A person shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, solely for being in the presence or vicinity of the medical use of marihuana in accordance with this act, or for assisting a registered qualifying patient with using or administering marihuana.

"Medical use" means "the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition." MCL 333.26423(f).

Here, the § 4(i) defense was inapplicable because defendant was not "solely . . . in the presence or vicinity of the medical use of marihuana in accordance with" the MMMA. See MCL 333.26424(i). Rather, the facts indicate that he possessed the marijuana with the intent to sell it. For example, there was testimony that defendant admitted to Sheriff Whetstone that he had just

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

sold marijuana, and there was evidence indicative of marijuana sales in the apartment. Additionally, there is no indication that counsel would have been able to establish that there was any medical use of the marijuana in accordance with the MMMA because Majors was unwilling to testify at the time such a motion could have been brought. Indeed, at trial, she invoked her Fifth Amendment right not to testify and never testified that the marijuana belonged to her. Moreover, even if Majors had been willing to testify that the marijuana belonged to her, the amount of marijuana found was approximately 207 grams, well over the 2.5 ounces (approximately 71 grams) that is permitted under § 4(a) of the MMMA. See MCL 333.26424(a); *People v Mazur*, 497 Mich 302, 306; ___ NW2d ___ (2015) (holding that a defendant cannot invoke a § 4(i) defense under the theory that he was solely in the presence or vicinity of the medical use of marijuana if the medical use of marijuana did not comply with the MMMA). For the same reasons, there is not a reasonable probability that, had counsel raised this defense, the result of the proceedings would have been different. See *Trakhtenberg*, 493 Mich at 51.

Likewise, a defense pursuant to § 8 would have been equally meritless. Section 8 provides an affirmative defense for "a patient and a patient's primary caregiver." MCL 333.26428(a). Defendant was neither of these, and thus this defense was inapplicable to him. Indeed, as plaintiff notes in its brief, defendant could not be a caregiver because he was convicted of a felony within 10 years before the incident and had previously been convicted of a felony involving illegal drugs. See MCL 333.26423(h) (defining the term "primary caregiver" as excluding persons who have been convicted of a felony within the past 10 years or have been convicted of a felony involving illegal drugs). For the same reason, there is not a reasonable probability that, had counsel raised this defense, the result of the proceedings would have been different. See *id*.

## B. FAILURE TO CALL TALASKI AS A WITNESS

Defendant has failed to establish the factual predicate for this ineffective assistance claim. See *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) ("The defendant has the burden of establishing the factual predicate of his ineffective assistance claim."). Our review is limited to mistakes apparent on the record, and, on the instant record, there is no evidence that Talaski would have been willing and able to testify, and no evidence of what Talaski would have testified to. Defendant has not submitted an affidavit from Talaski, and it is unlikely that Talaski would have testified that he sold the marijuana because he would be admitting to the commission of a crime. Accordingly, because it is not apparent on the record that Talaski would have testified as defendant has represented, defendant has not carried his burden of showing that counsel was constitutionally ineffective. See *id*. Furthermore, defense counsel indicated at trial that he planned to call Talaski as a witness, but Talaski was not in the court building at the time that defense counsel planned to call him. Therefore, defense counsel did not render ineffective assistance for failing to call Talaski as a witness at trial since the record indicates that defense counsel planned to call Talaski as a witness, and Talaski failed to appear at trial. See *Trakhtenberg*, 493 Mich at 51.

### III. EXCLUSION OF EVIDENCE AND RIGHT TO PRESENT A DEFENSE

Defendant next argues that the trial court abused its discretion and interfered with his right to present a defense when it prohibited the introduction of evidence that Majors had a medical marijuana card and suffered from medical conditions for which she required medical marijuana. We disagree.

Although defendant challenged the exclusion of this evidence at trial, he did not do so on the basis that it violated his constitutional right to present a defense. Accordingly, this issue is reviewed as an unpreserved constitutional claim. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003); *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003) (noting that an objection to evidence on one ground is insufficient to preserve an appellate attack on a different ground).

Generally, a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). " 'An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes.' " *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013) (citation omitted). However, we review unpreserved constitutional issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. . . . Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." [*Id.* at 763 (citations omitted; alteration in *Carines*).]

A criminal defendant has a constitutional right to present a defense. *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008). However, the right to present a defense is not absolute, and "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id*. at 250 (citation and quotation marks omitted). Michigan has a legitimate interest in implementing rules, including rules excluding evidence in criminal trials. *Id*. "Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *Id*. (citations and quotation marks omitted). This Court has held that MRE 402, which bars admission of irrelevant evidence, does not infringe on the right to present a defense. *Id*.

Generally, all relevant evidence is admissible. MRE 402. Evidence that tends to make the existence of a fact of consequence in the case more probable or less probable is relevant and, therefore, admissible. MRE 401, 402. However, the trial court has discretion to exclude relevant

evidence if its probative value is substantially outweighed by "confusion of the issues" or "misleading the jury." MRE 403.

Before trial, defendant brought a motion in limine, seeking to introduce evidence that the marijuana belonged to Majors, that Majors needed the marijuana for serious medical issues, and that Majors had a medical marijuana patient card and used marijuana for her medical issues. Defense counsel asserted that defendant was being charged with possessing Majors's medicine, and that the evidence related to her medical use of marijuana was relevant to explain why the marijuana was there. The prosecutor argued that Majors was not in compliance with the MMMA because the large amount of marijuana exceeded the 2.5 ounce limit authorized by the MMMA, which precluded a § 4(i) defense. The prosecutor also pointed out that defendant did not request an evidentiary hearing before trial, which precluded an examination of whether defendant could raise a § 8 defense. Defense counsel argued that defendant was not asserting a § 4 or § 8 defense since the marijuana was not his. The trial court ruled that defendant could present evidence that the marijuana belonged to Majors, but could not present evidence that she possessed the marijuana pursuant to an MMMA patient card. The court explained that defendant did not possess a medical marijuana card and did not raise the proper pretrial motions with regard to a § 4 or a § 8 defense. The court reasoned that whether Majors possessed a medical marijuana card was not relevant to whether defendant possessed the marijuana. The court noted that it was unclear whether Majors possessed the marijuana legally pursuant to the MMMA and that bringing that issue into the trial would confuse the jury.

We agree with defendant that this evidence had some relevance because it would tend to make it more probable that Majors possessed the marijuana in the apartment. However, as the trial court noted, the defense that Majors possessed the marijuana was not dependent on whether her possession was lawful, and raising the medical marijuana issue would force the prosecutor to present evidence that her possession was not lawful under the MMMA, which would tend to confuse or mislead the jury as to the real issue: whether defendant possessed the marijuana. Additionally, even if Majors could possess the marijuana legally pursuant to the MMMA, that in no way prevented defendant from also possessing the marijuana.[2] See *People v Bylsma*, 493 Mich 17, 31-32; 825 NW2d 543 (2012) (explaining that a person possesses a controlled substance when he exercises dominion and control over it and that possession may be joint). Thus, this evidence was of little probative value, and there was some likelihood that the jury

---

[2] As the court explained in the jury instructions:

> Possession does not necessarily mean ownership. Possession means that either, one, the person has . . . actual physical control of the substance as I do the pen I'm now holding or the person has the right to control the substance even though it is in a different room or place.

> Possession may be sole where one person alone possesses the substance. Possession may be joint where two or more people each share possession.

would erroneously focus on whether Majors was in compliance with the MMMA instead of whether defendant possessed the marijuana. Accordingly, we conclude that the trial court did not abuse its discretion or deny defendant his right to present a defense by prohibiting defendant from introducing evidence that Majors had a medical marijuana card and suffered from medical conditions for which she required medical marijuana. See MRE 403; *Unger*, 278 Mich App at 250.

Even if we were to determine that the trial court erred in excluding this evidence, defendant fails to show prejudice. Under the trial court's ruling, defendant was allowed to argue that the marijuana belonged to Majors and not him, and that is exactly what he argued at trial. Because defendant could still make this argument, any prejudicial effect of the trial court's ruling was significantly reduced, especially since the defense that the marijuana belonged to Majors could still be credible without the admission of evidence related to Majors' medical marijuana license. Additionally, even if defendant had been allowed to present this evidence, and thus could prove that Majors had a right to possess the marijuana, the evidence would not undermine the witness testimony that defendant sold the marijuana that Majors had a right to possess. Accordingly, it is not more probable than not that the outcome would have been different had the trial court allowed the introduction of evidence that Majors had a medical marijuana card and suffered from medical conditions for which she required medical marijuana. As such, plain error affecting substantial rights did not occur. See *Carines*, 460 Mich at 763.

## IV. THE POSTTRIAL MOTION

Defendant next argues that the trial court could not impose a criminal penalty upon him because he could satisfy § 4(i) of the MMMA at the time of sentencing. We disagree. This issue presents questions of law that we review de novo. *People v Kolanek*, 491 Mich 382, 393; 817 NW2d 528 (2012).

After the trial, a newly appointed defense attorney filed a motion asserting that defendant was immune from "penalty" due to the protections found in § 4(i) of the MMMA for being in the "presence or vicinity" of a registered patient's legal medical use. Attached to the motion was an affidavit from Majors wherein she asserted that (1) the marijuana belonged to her, (2) there was no "usable marijuana" in excess of 2.5 ounces because much of it was frozen and not dried, (3) the amount of marijuana found was not more than reasonably necessary to ensure the uninterrupted availability of marijuana to treat her medical conditions, and (4) she wanted to testify at defendant's trial but the appointed attorney misled her and improperly influenced her into pleading the Fifth Amendment.

The trial court correctly imposed a penalty on defendant since he failed to establish that he was entitled to protection under § 4(i). Again, § 4(i) of the MMMA provides that "A person shall not be subject to arrest, prosecution, *or penalty* in any manner . . . solely for being in the presence or vicinity of the medical use of marihuana in accordance with [the MMMA]." MCL 333.26424(i) (emphasis added). As discussed above in regard to defendant's ineffective assistance claim, the § 4(i) defense had no bearing on the instant case. This is especially true at the point in the proceedings where this issue was raised, when a jury had already concluded that defendant did not meet the statute's requirement of solely being in the presence or vicinity of the medical use of marijuana. Defendant was convicted of possession of marijuana, MCL

333.7403(2)(d), and possession of less than 5 kilograms of marijuana with intent to deliver, MCL 333.7401(2)(d)(*iii*). Thus, the jury necessarily determined that defendant possessed marijuana and possessed marijuana with intent to deliver. Had the jury believed that defendant was merely in the presence or vicinity of the marijuana, it would not have convicted him of these charges. The immunity provided by MCL 333.26424(i) was therefore inapplicable, and the trial court did not violate this provision by sentencing defendant for these marijuana-related offenses that the jury had found him guilty of committing.[3] See MCL 333.26424(i).

## V. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues that the prosecution presented insufficient evidence to support his conviction for assaulting, resisting, or obstructing a police officer. We disagree.

We review de novo a challenge to the sufficiency of the evidence supporting a conviction. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id*. " '[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Kissner*, 292 Mich App 526, 534; 808 NW2d 522 (2011) (citation omitted).

MCL 750.81d(1) provides that "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony." The statute defines the term "obstruct" to include "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

According to Sheriff Whetstone, defendant fled when he was told that he was being detained. He ran about 30 yards before stopping, after turning and seeing that Sheriff Whetstone had given chase, drawn his Taser, and pointed the Taser at defendant. Under these circumstances, the prosecution presented sufficient evidence to support defendant's conviction

---

[3] We need not address the question whether defendant properly raised the issue of § 4(i) immunity during the penalty phase of the proceedings since defendant was not entitled to immunity under § 4(i). We also need not address defendant's argument that the medical use of marijuana was in accordance with the MMMA since Majors established in her affidavit that she met the requirements of a § 8 defense because, as discussed above, defendant was not *solely* in the presence or vicinity of the medical use of marijuana as required under § 4(i). See MCL 333.26424(i).

because fleeing a police officer when one is told he is being detained constitutes resisting or obstructing the officer.  See MCL 750.81d(1) and (7)(a).

Affirmed.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan